UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

BARBARA LYNN CRUSSEN,                          Case No. 12-12964

        Plaintiff,                          Denise Page Hood
v.                                             United States District Judge

COMMISSIONER OF SOCIAL SECURITY,               Michael Hluchaniuk
                                               United States Magistrate Judge

        Defendant.
_____/

**REPORT AND RECOMMENDATION**
**CROSS-MOTIONS FOR SUMMARY JUDGMENT (Dkt. 11, 14)**

## I.   PROCEDURAL HISTORY

### A.   Proceedings in this Court

On July 6, 2012, plaintiff filed the instant suit seeking judicial review of the

Commissioner's unfavorable decision disallowing benefits.  (Dkt. 1).  Pursuant to

28 U.S.C. § 636(b)(1)(B) and Local Rule 72.1(b)(3), District Judge Denise Page

Hood referred this matter to the undersigned for the purpose of reviewing the

Commissioner's decision denying plaintiff's claim for a period of disability and

disability insurance benefits.  (Dkt. 3).  This matter is before the Court on

cross-motions for summary judgment.  (Dkt. 11, 14).

### B.   Administrative Proceedings

Plaintiff filed the instant claims on July 17, 2009, alleging that she became

disabled on December 31, 2000.  (Dkt. 8-3, Pg ID 95).[1]  The claim was initially

disapproved by the Commissioner on October 27, 2009.  (Dkt. 8-3, Pg ID 95).

Plaintiff requested a hearing and on October 21, 2010, plaintiff appeared with an

attorney before Administrative Law Judge (ALJ) Theodore W. Grippo, who

considered the case de novo.  In a decision dated February 25, 2011, the ALJ found

that plaintiff was not disabled.  (Dkt. 8-3, Pg ID 95-107).  Plaintiff requested a

review of this decision on March 15, 2011.  (Dkt. 8-2, Pg ID 33-35).  The ALJ's

decision became the final decision of the Commissioner when, after the review of

additional exhibits,[2] the Appeals Council, on May 9, 2012, denied plaintiff's

request for review.  (Dkt. 8-2, Pg ID 26-28); *Wilson v. Comm'r of Soc. Sec.*, 378

F.3d 541, 543-44 (6th Cir. 2004).

For the reasons set forth below, the undersigned **RECOMMENDS** that

plaintiff's motion for summary judgment be **GRANTED IN PART**, that

---

[1] Plaintiff filed an earlier application in 2007, which was denied and not appealed.  In the instant matter, plaintiff argued before the ALJ that the earlier matter should be re-opened.  The ALJ declined to do so and plaintiff has not raised that finding on appeal. (Dkt. 8-3, Pg ID 95-96). Thus, while plaintiff claims to have been disabled since 2000, there is already a finding of non-disability through the date of the first denial, November 6, 2007.  *Id.*

[2] In this circuit, where the Appeals Council considers additional evidence but denies a request to review the ALJ's decision, since it has been held that the record is closed at the administrative law judge level, those "AC" exhibits submitted to the Appeals Council are not part of the record for purposes of judicial review.  *See Cotton v. Sullivan*, 2 F.3d 692, 696 (6th Cir. 1993); *Cline v. Comm'r of Soc. Sec.*, 96 F.3d 146, 148 (6th Cir. 1996). Therefore, since district court review of the administrative record is limited to the ALJ's decision, which is the final decision of the Commissioner, the court can consider only that evidence presented to the ALJ. In other words, Appeals Council evidence may not be considered for the purpose of substantial evidence review.

defendant's motion for summary judgment be **GRANTED IN PART**, that the

findings of the Commissioner be **REVERSED IN PART**, and that this matter be

remanded for further proceedings under Sentence Four.

## II.    FACTUAL BACKGROUND

### A.    ALJ Findings

Plaintiff was 43 years of age at the time of the most recent administrative

hearing.  (Dkt. 8-2, Pg ID 43).  Plaintiff's past relevant work included work as a

cashier, a customer service representative, a reservation clerk, an office manager,

and a stock clerk.  (Dkt. 8-3, Pg ID 106).  The ALJ applied the five-step disability

analysis to plaintiff's claim and found at step one that plaintiff had not engaged in

substantial gainful activity since the alleged onset date.  (Dkt. 8-3, Pg ID 98).  At

step two, the ALJ found that plaintiff's osteoarthritis of the spine, affective

disorder, and anxiety disorder were "severe" within the meaning of the second

sequential step.  (Dkt. 8-3, Pg ID 99).  At step three, the ALJ found no evidence

that plaintiff's combination of impairments met or equaled one of the listings in the

regulations.  (Dkt. 8-3, Pg ID 99).  The ALJ concluded that plaintiff has the

residual functional capacity to perform light work except that she is unable to

climb ladders, ropes, or scaffolds; she is limited to occasional balancing, stooping,

kneeling, crouching, crawling, and climbing of ramps or stairs; and she is limited

to unskilled work.  (Dkt. 8-3, Pg ID 101).  At step four, the ALJ found that plaintiff

could perform her past relevant work as a cashier.  (Dkt. 8-3, Pg ID 106).

B.    Plaintiff's Claims of Error

According to plaintiff, the ALJ's assessment of plaintiff's residual functional capacity is inconsistent with the findings of the medical experts on which he purportedly relied.  That is, the ALJ gave great weight to certain medical opinions, but, according to plaintiff, misstated those opinions or failed to adopt them in full. For example, the ALJ indicated that he "afforded great weight to the opinion of the independent consultative examiner, E. Montasir, M.D."  (Tr 79). However, plaintiff contends that the ALJ misstated those opinions, indicating that Dr. Montasir "opined the claimant is generally capable of performing light work, subject to the following non-exertional limitations: claimant is unable to climb ladders, ropes, or scaffolds; claimant is limited to occasional balance, stoop, kneel, crouch, crawl, and climbing of ramps or stairs; and, claimant is limited to unskilled work (Ex. 18F, p.3 )."  (Tr. 79-80).  According to plaintiff, Dr. Montasir imposed far more restrictive limitations.  Significantly, he indicated that plaintiff could only walk about two blocks, should not stand for more than an hour at a time, and should not lift more than ten pounds.  (Tr 644).  These limitations would disqualify plaintiff from light work, as it is defined in the regulations.  The limitations actually imposed by Dr. Montasir, as opposed to those acknowledged by the ALJ, would clearly disqualify plaintiff from such work.

Further, plaintiff asserts that the ALJ improperly rejected the opinions of Dr. Cusick, plaintiff's treating physician, particularly as set forth in his physical capacities evaluation (Tr 732-734), finding it was inconsistent with the record.  (Tr 80).  However, plaintiff suggests that Dr. Cusick's findings were consistent with the findings of Dr. Montasir, when all of those findings are considered.  When all of Dr. Montasir's opinions are considered, and not just the limited subset acknowledged by the ALJ, the opinions of treater Cusick should be subject to further analysis.  The VE indicated that plaintiff could return to her past relevant work as a cashier (Tr 33), a finding the ALJ adopted (Tr 80).  However, the VE indicated that his testimony in that regard assumed that plaintiff would be able to stand for six hours out of an eight-hour workday, consistent with the definition of light work.  (Tr 35).  However, plaintiff could not handle such exertion, according to either Dr. Montasir or Dr. Cusick.

In assessing plaintiff's mental status, the ALJ found the records of both treating physician Dr. Wagenheim and consultative examiner Dr. Shah as consistent with his findings.  (Tr 78-79).  Plaintiff maintains that such a finding fails to fully assess the impact of the opinions relied on.  In that regard, Dr. Shah indicated that plaintiff could understand, retain, and follow simple instructions (Tr 639), as the ALJ noted (Tr 78).  However, the doctor further stated that plaintiff's depressive episodes and panic disorder would affect her interactions with the

public and coworkers (Tr 639), a definite problem for an individual the ALJ held could return to a cashier job that would require interaction with the general public all day, every day.  (Tr 80).  Notably, while the ALJ would allow plaintiff to handle other people's money all day, Dr. Shah indicated that she could not even handle her own benefit funds.  (Tr 639).  According to plaintiff, the inconsistency is clear.

Additionally, the ALJ concluded that plaintiff would have moderate limitations on her ability to maintain concentration, persistence, and pace.  (Tr 74). However, the only notation in his RFC assessment corresponding to such a limitation restricted plaintiff to "unskilled work."  According to plaintiff, courts have often held that such a vague mention fails to adequately detail the limitations posed by difficulties with concentration and attention.  *See e.g.*, *Ealy v. Comm'r of Soc. Sec.*, 594 F.3d 504, 516 (6th Cir. 2010); *Edwards v. Barnhart*, 383 F.Supp.2d 920, 930 (E.D. Mich. 2005).  Where the VE indicated that plaintiff would need to stay on task 90% of the time when customers were present (Tr 34), plaintiff asserts that this is a significant deficiency.

Furthermore, treating physician Dr. Wagenheim opined that plaintiff would manifest more significant limitations, with respect to the ability to understand, remember, and carry out detailed instructions; perform activities within a schedule; maintain regular attendance and be punctual; respond appropriately to changes in

the work setting; maintain socially appropriate behavior and adhere to basic
standards of neatness and cleanliness, set realistic goals; and accept instructions
and respond appropriately to criticism. (Tr 433-434). According to plaintiff, the
ALJ did not address these issues at all.

      C.      <u>The Commissioner's Motion for Summary Judgment</u>

      According to the Commissioner, plaintiff does not address the objective
medical evidence of record on which the ALJ expressly relied. Rather, plaintiff's
first argument is limited to her claim that Drs. Montasir and Shah opined that
plaintiff is more limited than the ALJ found in the RFC. Several flaws undermine
this argument. First, it assumes that the ALJ adopted these opinions in their
entirety. He did not. He gave neither of them controlling weight. Rather, the ALJ
gave Dr. Montasir's opinion "great" weight and found that Dr. Shah's opinions
were not completely but only "generally" consistent with the medical evidence of
record. (Tr. 79). The plain language of the decision, according to the
Commissioner, allows that the ALJ did not accept each and every finding or
opinion of these medical sources. The Commissioner maintains that this is
consistent with the regulations, which state that the opinion of a nontreating
physician should be accorded weight in proportion to, among other things, the
extent it is supported by medical evidence, and is consistent with the record as a
whole.

Similarly, plaintiff briefly argues that the ALJ did not consider all of the limitations that Dr. Wagenheim identified.  For example, she notes that Dr. Wagenheim believed plaintiff had moderate limitations understanding, remembering, and executing detailed instructions and she argues that the ALJ "did not address these issues at all."  *Id.*  According to the Commissioner, this is hardly fatal as these findings are consistent with the ALJ's RFC finding.  The ALJ restricted plaintiff to unskilled work, acknowledging that plaintiff had greater difficulties handling more detailed or complicated tasks and instructions.

The Commissioner maintains that plaintiff is similarly incorrect in her assumption that substantial evidence cannot support the ALJ's RFC finding without the ALJ's adoption in toto of a medical source opinion.  To the contrary, an ALJ has no obligation to adopt wholesale every limitation cited by a medical source.  That is because the determination of a claimant's RFC lies solely within the province of the Commissioner.  And, the Commissioner maintains that the medical opinions of record do directly correspond to the ALJ's RFC finding. In October 2009, state agency reviewing physician Muhammed Ahmed, M.D., reviewed plaintiff's records, performed an RFC assessment, and concluded, like the ALJ, that plaintiff could perform a range of light work.  (Tr. 48-49).  In particular, Dr. Ahmed found that plaintiff could lift up to 20 pounds occasionally and 10 pounds frequently, and could stand/walk, and sit each for six hours in an

Report and Recommendation
Cross-Motions for Summary Judgment
*Crussen v. Comm'r*; Case No. 12-12964

eight-hour workday. (Tr. 48). Like the ALJ, Dr. Ahmed indicated that plaintiff should never climb ladders, ropes, or scaffolds, but could occasionally climb ramps and stairs, and occasionally balance, kneel, crouch, and crawl. (Tr. 48-49). That same month, state agency physician Zahra Yousuf, M.D., reviewed plaintiff's records, and performed a mental RFC assessment. (Tr. 46, 49-52). He concluded that plaintiff "retains the mental capacity to meet the basic demands for simple unskilled work." (Tr. 50). Like the ALJ, Dr. Yousuf found that plaintiff could still perform her past relevant work. (Tr. 52). These opinions are entirely consistent with the ALJ's RFC finding.

Plaintiff also argues that the ALJ should not have rejected the opinion of Steven Cusick, M.D., a treating physician. Dr. Cusick completed a "Physical Capacities Evaluation Medical Assessment" in October 2010. (Tr. 733-34). According to this assessment, plaintiff could stand/walk for no more than one hour in an eight-hour workday, and could lift up to five pounds frequently and up to 10 pounds occasionally. (Tr. 733). In addition, Dr. Cusick opined that plaintiff would need one 20-minute rest period per hour (Tr. 734). These restrictions would preclude light work. The regulations explain that a treating physician's opinion will be given controlling weight only if it is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence. Otherwise, such an opinion is accorded weight

in proportion to, among other things, the extent it is supported by medical evidence, and is consistent with the record as a whole.  According to the Commissioner, the ALJ correctly applied these regulations when evaluating and rejecting Dr. Cusick's opinions.  The ALJ explained that the extreme limitations that Dr. Cusick recommended were inconsistent with the medical evidence, including the MRI and CT studies, plaintiff's history of conservative treatment, and notes from another treating physician that documented no increase in severity of plaintiff's subjective complaints.  (Tr. 80).  The Commissioner also points out that Dr. Cusick's opinions are inconsistent with plaintiff's and her grandmother's report of plaintiff's activities, which included walking, driving, shopping, cooking, and housecleaning.  Thus, the Commissioner maintains that substantial evidence supports the ALJ's decision to discount Dr. Cusick's assessment.

Lastly, plaintiff asserts that the ALJ did not sufficiently account for her moderate difficulties maintaining concentration, persistence, pace.  The ALJ found that plaintiff had such moderate difficulties (Tr. 74), and so restricted her to unskilled work.  (Tr. 75).  According to the Commissioner, this is sufficient, as Dr. Yousuf also found that plaintiff had moderate difficulties in this functional domain (Tr. 46), yet opined that plaintiff retained the ability to perform simple unskilled work.  (Tr. 50).  This Court has repeatedly affirmed ALJ decisions concluding that

Report and Recommendation
Cross-Motions for Summary Judgment
*Crussen v. Comm'r*; Case No. 12-12964

a claimant could perform some subset of unskilled work notwithstanding a finding of moderate limitations in concentration, persistence, or pace where the medical source who found the moderate limitation also found the ability to do unskilled work.  In fact, this Court has viewed the state agency psychologist's finding that a claimant could do a subset of unskilled work despite his moderate limitations as "particularly compelling."  *Lewicki v. Comm'r of Soc. Sec.*, 2010 WL 3905375, at *5 (E.D. Mich. 2010).  Indeed, "Plaintiff's argument for the selective adoption of [the State agency physician's] 'moderate' limitations without considering his ultimate conclusion [that Plaintiff could work] would amount to a distortion of the record."  *Hess v. Comm'r of Soc. Sec.*, 2008 WL 2478325, at *7-8 (E.D. Mich. 2008), *adopted by* 2008 WL 2478325.  The Commissioner contends that such is the case here, with Dr. Yousuf's assessment.  Not only does plaintiff fail to acknowledge that the ALJ accounted for her moderate limitations in maintaining concentration, persistence, or pace, the Commissioner asserts that she fails to explain why the ALJ's restriction to unskilled work did not adequately account for these moderate limitations.

## III.   DISCUSSION

### A.   Standard of Review

In enacting the social security system, Congress created a two-tiered system in which the administrative agency handles claims, and the judiciary merely

reviews the agency determination for exceeding statutory authority or for being arbitrary and capricious. *Sullivan v. Zebley*, 493 U.S. 521 (1990). The administrative process itself is multifaceted in that a state agency makes an initial determination that can be appealed first to the agency itself, then to an ALJ, and finally to the Appeals Council. *Bowen v. Yuckert*, 482 U.S. 137 (1987). If relief is not found during this administrative review process, the claimant may file an action in federal district court. *Mullen v. Bowen*, 800 F.2d 535, 537 (6th Cir.1986).

This Court has original jurisdiction to review the Commissioner's final administrative decision pursuant to 42 U.S.C. § 405(g). Judicial review under this statute is limited in that the court "must affirm the Commissioner's conclusions absent a determination that the Commissioner has failed to apply the correct legal standard or has made findings of fact unsupported by substantial evidence in the record." *Longworth v. Comm'r of Soc. Sec.*, 402 F.3d 591, 595 (6th Cir. 2005); *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997). In deciding whether substantial evidence supports the ALJ's decision, "we do not try the case de novo, resolve conflicts in evidence, or decide questions of credibility." *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007); *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984). "It is of course for the ALJ, and not the reviewing court, to evaluate the credibility of witnesses, including that of the claimant." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 247 (6th Cir. 2007); *Jones v. Comm'r of Soc.*

*Sec.*, 336 F.3d 469, 475 (6th Cir. 2003) (an "ALJ is not required to accept a claimant's subjective complaints and may ... consider the credibility of a claimant when making a determination of disability."); *Cruse v. Comm'r of Soc. Sec.*, 502 F.3d 532, 542 (6th Cir. 2007) (the "ALJ's credibility determinations about the claimant are to be given great weight, particularly since the ALJ is charged with observing the claimant's demeanor and credibility.") (quotation marks omitted); *Walters*, 127 F.3d at 531 ("Discounting credibility to a certain degree is appropriate where an ALJ finds contradictions among medical reports, claimant's testimony, and other evidence.").  "However, the ALJ is not free to make credibility determinations based solely upon an 'intangible or intuitive notion about an individual's credibility.'"  *Rogers*, 486 F.3d at 247, quoting Soc. Sec. Rul. 96-7p, 1996 WL 374186, *4.

If supported by substantial evidence, the Commissioner's findings of fact are conclusive.  42 U.S.C. § 405(g).  Therefore, this Court may not reverse the Commissioner's decision merely because it disagrees or because "there exists in the record substantial evidence to support a different conclusion." *McClanahan v. Comm'r of Soc. Sec.*, 474 F.3d 830, 833 (6th Cir. 2006); *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (*en banc*).  Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Rogers*, 486

F.3d at 241; *Jones*, 336 F.3d at 475.  "The substantial evidence standard

presupposes that there is a 'zone of choice' within which the Commissioner may

proceed without interference from the courts."  *Felisky v. Bowen*, 35 F.3d 1027,

1035 (6th Cir. 1994) (citations omitted), citing, *Mullen*, 800 F.2d at 545.

The scope of this Court's review is limited to an examination of the record

only.  *Bass*, 499 F.3d at 512-13; *Foster v. Halter*, 279 F.3d 348, 357 (6th Cir.

2001).  When reviewing the Commissioner's factual findings for substantial

evidence, a reviewing court must consider the evidence in the record as a whole,

including that evidence which might subtract from its weight.  *Wyatt v. Sec'y of

Health & Human Servs.*, 974 F.2d 680, 683 (6th Cir. 1992).  "Both the court of

appeals and the district court may look to any evidence in the record, regardless of

whether it has been cited by the Appeals Council."  *Heston v. Comm'r of Soc. Sec.*,

245 F.3d 528, 535 (6th Cir. 2001).  There is no requirement, however, that either

the ALJ or the reviewing court must discuss every piece of evidence in the

administrative record.  *Kornecky v. Comm'r of Soc. Sec.*, 167 Fed.Appx. 496, 508

(6th Cir. 2006) ("[a]n ALJ can consider all the evidence without directly

addressing in his written decision every piece of evidence submitted by a party.")

(internal citation marks omitted); *see also Van Der Maas v. Comm'r of Soc. Sec.*,

198 Fed.Appx. 521, 526 (6th Cir. 2006).

    B.    <u>Governing Law</u>

The "[c]laimant bears the burden of proving his entitlement to benefits." *Boyes v. Sec'y of Health & Human Servs.*, 46 F.3d 510, 512 (6th Cir. 1994); *accord*, *Bartyzel v. Comm'r of Soc. Sec.*, 74 Fed.Appx. 515, 524 (6th Cir. 2003). There are several benefits programs under the Act, including the Disability Insurance Benefits Program (DIB) of Title II (42 U.S.C. §§ 401 *et seq*.) and the Supplemental Security Income Program (SSI) of Title XVI (42 U.S.C. §§ 1381 *et seq*.). Title II benefits are available to qualifying wage earners who become disabled prior to the expiration of their insured status; Title XVI benefits are available to poverty stricken adults and children who become disabled. F. Bloch, Federal Disability Law and Practice § 1.1 (1984). While the two programs have different eligibility requirements, "DIB and SSI are available only for those who have a 'disability.'" *Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007). "Disability" means:

> inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.

42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A) (DIB); 20 C.F.R. § 416.905(a) (SSI).

The Commissioner's regulations provide that disability is to be determined through the application of a five-step sequential analysis:

> Step One:  If the claimant is currently engaged in

substantial gainful activity, benefits are denied without further analysis.

Step Two:  If the claimant does not have a severe impairment or combination of impairments, that "significantly limits ... physical or mental ability to do basic work activities," benefits are denied without further analysis.

Step Three:  If plaintiff is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the severe impairment meets or equals one of the impairments listed in the regulations, the claimant is conclusively presumed to be disabled regardless of age, education or work experience.

Step Four:  If the claimant is able to perform his or her past relevant work, benefits are denied without further analysis.

Step Five: Even if the claimant is unable to perform his or her past relevant work, if other work exists in the national economy that plaintiff can perform, in view of his or her age, education, and work experience, benefits are denied.

*Carpenter v. Comm'r of Soc. Sec.*, 2008 WL 4793424 (E.D. Mich. 2008), citing, 20 C.F.R. §§ 404.1520, 416.920; *Heston*, 245 F.3d at 534.  "If the Commissioner makes a dispositive finding at any point in the five-step process, the review terminates."  *Colvin*, 475 F.3d at 730.

"Through step four, the claimant bears the burden of proving the existence and severity of limitations caused by her impairments and the fact that she is

precluded from performing her past relevant work." *Jones*, 336 F.3d at 474, cited with approval in *Cruse*, 502 F.3d at 540. If the analysis reaches the fifth step without a finding that the claimant is not disabled, the burden transfers to the Commissioner. *Combs v. Comm'r of Soc. Sec.*, 459 F.3d 640, 643 (6th Cir. 2006). At the fifth step, the Commissioner is required to show that "other jobs in significant numbers exist in the national economy that [claimant] could perform given [his] RFC and considering relevant vocational factors." *Rogers*, 486 F.3d at 241; 20 C.F.R. §§ 416.920(a)(4)(v) and (g).

If the Commissioner's decision is supported by substantial evidence, the decision must be affirmed even if the court would have decided the matter differently and even where substantial evidence supports the opposite conclusion. *McClanahan*, 474 F.3d at 833; *Mullen*, 800 F.2d at 545. In other words, where substantial evidence supports the ALJ's decision, it must be upheld.

C.    Analysis and Conclusions

1.    Physical RFC/Medical Opinions

In weighing the opinions and medical evidence, the ALJ must consider relevant factors such as the length, nature and extent of the treating relationship, the frequency of examination, the medical specialty of the treating physician, the opinion's evidentiary support, and its consistency with the record as a whole. 20 C.F.R. § 404.1527(d)(2)-(6). Therefore, a medical opinion of an examining source

is entitled to more weight than a non-examining source and a treating physician's opinion is entitled to more weight than a consultative physician who only examined the claimant one time.  20 C.F.R. § 404.1527(d)(1)-(2).  A decision denying benefits "must contain specific reasons for the weight given to the treating source's medical opinion, supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's opinion and the reasons for that weight."  Soc.Sec.R. 96-2p, 1996 WL 374188, *5 (1996).  The opinion of a treating physician should be given controlling weight if it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and is "not inconsistent with the other substantial evidence in [the] case record."  *Wilson*, 378 F.3d at 544; 20 C.F.R. § 404.1527(d)(2).  A physician qualifies as a treating source if the claimant sees her "with a frequency consistent with accepted medical practice for the type of treatment and/or evaluation required for [the] medical condition."  20 C.F.R. § 404.1502.  "Although the ALJ is not bound by a treating physician's opinion, 'he must set forth the reasons for rejecting the opinion in his decision.'"  *Dent v. Astrue*, 2008 WL 822078, *16 (W.D. Tenn. 2008) (citation omitted).  "Claimants are entitled to receive good reasons for the weight accorded their treating sources independent of their substantive right to receive disability benefits."  *Smith v. Comm'r of Soc. Sec.*, 482 F.3d 873, 875 (6th Cir. 2007).  "The

opinion of a non-examining physician, on the other hand, 'is entitled to little weight if it is contrary to the opinion of the claimant's treating physician.'" *Adams v. Massanari*, 55 Fed.Appx. 279, 284 (6th Cir. 2003).  Courts have remanded the Commissioner's decisions when they have failed to articulate "good reasons" for not crediting the opinion of a treating source, as § 1527(d)(2) requires.  *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 545 (6th Cir. 2000), citing, *Halloran v. Barnhart*, 362 F.3d 28, 33 (2d Cir. 2004) ("We do not hesitate to remand when the Commissioner has not provided 'good reasons' for the weight given to a treating physician's opinion and we will continue remanding when we encounter opinions from ALJ's that do not comprehensively set forth the reasons for the weight assigned to a treating physician's opinion.").

In this case, the ALJ thoroughly considered the factors in the regulations in reaching the conclusion that Dr. Cusick's opinion was not entitled to controlling or significant weight:

> The undersigned has also considered the opinion of Dr. Cusick (Ex. 24F, pp. 2-3). Dr. Cusick opined the claimant can perform a significantly limited range of sedentary work. Specifically, Dr. Cusick concluded: claimant can sit less than four hours in an eight-hour workday; stand and/or walk less than one hour in an eight-hour workday; occasionally lift six to ten pounds; never use foot controls; and, requires one twenty-minute rest period per hour. (*Id.*)  The undersigned finds the opinion is inconsistent with the medical evidence of record. First, the opinion is inconsistent with the

> objective diagnostics of record, including MRI and CT
> scans, as discussed above. Specifically, an MRI scan of
> the lumbar spine was entirely unremarkable and an MRI
> of the cervical spine revealed degenerative changes of
> one intervertebral disc; both scans are generally
> inconsistent with marked neck or back impairment.
> Second, treatment has been conservative in nature,
> primarily consisting of routine clinical examinations and
> medication management (Ex. l2F, pp. 2-6). With the
> exception the left wrist surgery, Dr. Cusick had not
> treated the claimant for greater than one and one-half
> years prior to generating the opinion. Surprisingly, while
> Dr. Cusick performed the left wrist surgery four months
> prior, he did not assess any functional limitations in
> pushing, pulling, grasping, or fine manipulation (Ex. 24F,
> p. 2). Lastly, the records of Victor I. Corondan, the
> claimant's primary care physician, generally show stable
> subjective complaints with the same diagnoses for nearly
> one decade. The records neither impose nor cite the
> extreme functional limitations alleged by the claimant or
> assessed by Dr. Cusick. For the above reasons, the
> undersigned gives little weight to the opinion.

(Dkt. 8-3, Pg ID 107).  Despite this thorough analysis, plaintiff says that the ALJ

should have found Dr. Cusick's opinion to be entitled to great weight because it

was consistent with the whole of Dr. Montasir's opinion, which the ALJ gave

significant weight, but apparently did not adopt in full.  Dr. Montasir opined as

follows:

> Based on today's examination, the claimant should be
> able to work as far as her physical condition is
> concerned. The claimant has a problem with
> concentration and memory. There is limitation to range
> of motion of her back and radiculopathy in the right
> lower extremity. The claimant has difficulty with

> squatting. There is limitation on walking of about two
> blocks. The claimant should be able to use bilateral hands
> for fine manipulations. Standing should be limited to
> about an hour at a time. Pushing, pulling and lifting
> should be limited to about ten pounds. There is no
> limitation on climbing stairs. The claimant should not be
> involved in climbing ropes, ladders or scaffolding due to
> the above impressions.

(Dkt. 8-8, Pg ID 675).

It is true that the ALJ adopted some, but not all of Dr. Montasir's opinion.

Plaintiff does not really give any good explanation for her position that the ALJ

was required to do so, except that Dr. Montasir's opinions were consistent with Dr.

Cusick's opinions.  This may be true, but Dr. Cusick's opinions were not supported

by the medical evidence of record, as explained in detail by the ALJ.  Moreover,

not all of Dr. Montasir's opinions were directly translatable into functional

limitations.  For example, does plaintiff's ability to walk only two blocks at a time

mean that she can walk less than one hour in an eight-hour work day?  Plaintiff

offers no authority in support of such a notion.

Significantly, a state agency physician, Dr. Muhammad Ahmed, evaluated

all of plaintiff's medical records, including the opinions of Dr. Montasir and Dr.

Cusick and concluded that plaintiff was able to perform light work.  (Dkt. 8-3, Pg

Id 66-91).[3]  Dr. Ahmed's opinion fully supports the ALJ's RFC.  Although Dr.

_____

[3] This document is a summary of plaintiff's records and contains medical opinions
regarding her mental and physical impairments and functional limitations.  It was signed by a

Ahmed is a state agency reviewing physician, state agency doctors are "highly qualified physicians and psychologists who are experts in the evaluation of the medical issues in disability claims under the Act." *See* 20 C.F.R. §§ 404.1527(e)(2)(I), 416.927(e)(2)(I). "In appropriate circumstances, opinions from State agency medical and psychological consultants and other program physicians and psychologists may be entitled to greater weight than the opinions of treating or examining sources." Social Security Ruling (SSR) 96-6p, 1996 WL 374180, at *3 (1996); *see also Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 409 (6th Cir. 2009) ("Certainly, the ALJ's decision to accord greater weight to state agency physicians over Blakley's treating sources was not, by itself, reversible error."). While the ALJ did not expressly rely[4] on Dr. Ahmed's opinions, it is clear from the RFC that he did so. The undersigned finds no error in the ALJ's treatment of the medical opinions and the resulting physical RFC.

2.   Mental Limitations/Medical Opinions

---

single decision-maker, and two medical advisors. Dr. Ahmed opined as to plaintiff's physical functional limitations and Dr. Yousuf opined regarding plaintiff's mental limitations.

[4] "[A]n ALJ is not required to discuss every piece of ... evidence...." *Karger v. Comm'r of Social Security*, 414 Fed.Appx. 739, 753 (6th Cir. 2011). As the Court of Appeals stated in *Kornecky v. Commisioner of Social Security*, 167 Fed.Appx. 496, 507-08 (6th Cir. 2006), "it is well settled that '[a]n ALJ can consider all the evidence without directly addressing in his written decision every piece of evidence submitted by a party,'" quoting *Loral Defense Systems–Akron v. NLRB*, 200 F.3d 436, 453 (6th Cir. 1999), and "an ALJ's failure to cite specific evidence does not indicate that it was not considered." *Craig v. Apfel*, 212 F.3d 433, 436 (8th Cir. 2000).

Plaintiff's treating physician opined that plaintiff was moderately limited in her ability to understand and remember detailed instructions, her ability to carry out detailed instructions, her ability to maintain attention and concentration for extended periods, her ability to perform activities within a schedule, maintain regular attendance and be punctual within customary tolerances, the ability to complete a normal workday and worksheet without interruptions from psychologically-based symptoms, and to perform at a consistent pace without an unreasonable number and length of rest periods, the ability to accept instructions and respond appropriately to criticism from supervisors, the ability to maintain socially appropriate behavior and to adhere to basic standards of neatness and cleanliness, the ability to respond appropriately to changes in the work setting, and the ability to set realistic goals or make plans independently of others. (Dkt. 8-7, Pg ID 462-463). Dr. Shah, the consulting examiner, concluded that plaintiff could understand, retain, and follow simple instructions but that her moderate depressive episodes with panic disorder affects her interaction with the public and coworkers. He also opined that claimant was subject to relapses and the pressure of employment can be a major factor in decompensation on her part. Finally, he concluded that she was not able to manage her own benefit funds. (Dkt. 8-8, 670-671). Dr. Yousuf, the state agency reviewing physician, opined that plaintiff could do simple, unskilled work and that her mental impairments did not significantly

limit her functional abilities except that her depression and anxiety would interfere with concentration, persistence or pace and the timely completion of tasks.  (Dkt. 8-3, Pg ID 76).  In Dr. Yousuf's view, the other medical source opinions did not differ from his own findings.  (Dkt. 8-3, Pg ID 76).

Plaintiff contends that limiting her to "unskilled work" is not sufficient in light of the opinions of Dr. Wagenheim and Dr. Shah.  Plaintiff relies on *Edwards v. Barnhart*, 383 F. Supp.2d 920 (E.D. Mich. 2005) in support of her argument. The court in *Edwards* held that the ALJ's hypothetical, limiting plaintiff to "unskilled sedentary work," was not adequate to accommodate plaintiff's moderate limitations of concentration, persistence, and pace because plaintiff may have been unable "to meet quotas, stay alert, or work at a consistent pace, even at a simple, unskilled, routine job." *Id.* at 930.  However, other courts in this district have disagreed with the *Edwards* court's holding.  *See e.g.*, *Schalk v. Comm'r of Soc. Sec.*, 2011 WL 4406824, at *11 n.6, 7 (E.D. Mich. 2011) (distinguishing *Edwards* and discussing how "there is no brightline rule requiring remand whenever an ALJ's hypothetical includes a limitation of 'unskilled work' but excludes a moderate limitation in concentration.  Rather, [the court] must look at the record as a whole and determine if substantial evidence supports the ALJ's RFC."), *adopted by* 2011 WL 4406332 (E.D. Mich. 2011); *Lewicki v. Comm'r of Soc. Sec.*, 2010 WL 3905375, at *3 (E.D. Mich. 2010) (distinguishing *Edwards* and holding that

"[d]ecisions in this district reflect the conclusion that a moderate impairment in concentration, persistence, and pace does not necessarily preclude simple, routine, unskilled work").  Thus, "there is no bright-line rule requiring remand whenever an ALJ's hypothetical includes a limitation of 'unskilled work' but excludes a moderate limitation in concentration.  Rather, this Court must look at the record as a whole and determine if substantial evidence supports the ALJ's decision." *Taylor v. Comm'r of Soc. Sec.*, 2011 WL 2682682 at * 7 (E.D. Mich. May 17, 2011), *adopted by* 2011 WL 2682892 (E.D. Mich. July 11, 2011).

In the view of the undersigned, the mere limitation to "unskilled work" does not account for plaintiff's mental limitations, particularly those identified by Dr. Wagenheim and Dr. Shah as it relates to plaintiff's social limitations, along with the limitations in concentration, persistence or pace.  This case can be contrasted with *Hess v. Comm'r of Soc. Sec.*, 2008 WL 2478325, at *7-8 (E.D. Mich. June 16, 2008), in which the Court concluded that the limitation to "[s]imple routine tasks in a low stress environment" was not incompatible with moderate limitations of concentration, persistence, or pace.  Unlike the conclusions reached above regarding plaintiff's physical limitations, the ALJ does not provide sufficiently good reasons for essentially rejecting Dr. Wagenheim's opinions.  While the ALJ did not expressly reject Dr. Wagenheim's opinions, he did conclude that because the opinions only included moderate limitations, those limitations were essentially

insignificant, and presumably, not taken into account when formulating plaintiff's RFC. (Dkt. 8-3, Pg ID 104). The undersigned is also not persuaded that plaintiff's attempts to return to work and school on a part-time basis for "therapeutic reasons" as recommended by Dr. Wagenheim somehow undermines Dr. Wagenheim's ultimate conclusions and does not necessarily support the finding that plaintiff can work on a full-time basis. The ALJ simply does not connect the dots between the finding of "moderate impairments" as described by Dr. Shah (including social impairments) and plaintiff's ability to do unskilled work, and in particular, her former job as a cashier. In viewing the record as a whole, the undersigned concludes that "unskilled work," in this case, does not capture plaintiff's moderate mental impairments as described by Dr. Wagenheim and Dr. Shah. For this reason, this matter must be remanded for further consideration of plaintiff's mental functioning and Dr. Wagenheim's opinions, in particular.

## IV.    RECOMMENDATION

For the reasons set forth above, the undersigned **RECOMMENDS** that plaintiff's motion for summary judgment be **GRANTED IN PART**, that defendant's motion for summary judgment be **GRANTED IN PART**, that the findings of the Commissioner be **REVERSED IN PART**, and that this matter be remanded for further proceedings under Sentence Four.

The parties to this action may object to and seek review of this Report and

Recommendation, but are required to file any objections within 14 days of service, as provided for in Federal Rule of Civil Procedure 72(b)(2) and Local Rule 72.1(d).  Failure to file specific objections constitutes a waiver of any further right of appeal.  *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health and Human Servs.*, 932 F.2d 505 (6th Cir. 1981).  Filing objections that raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation.  *Willis v. Sec'y of Health and Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987).  Pursuant to Local Rule 72.1(d)(2), any objections must be served on this Magistrate Judge.

Any objections must be labeled as "Objection No. 1," "Objection No. 2," etc.  Any objection must recite precisely the provision of this Report and Recommendation to which it pertains.  Not later than 14 days after service of an objection, the opposing party may file a concise response proportionate to the objections in length and complexity.  Fed.R.Civ.P. 72(b)(2), Local Rule 72.1(d).  The response must specifically address each issue raised in the objections, in the same order, and labeled as "Response to Objection No. 1," "Response to Objection No. 2," etc.  If the Court determines that any objections are without merit, it may rule without awaiting the response.

Date: August 6, 2013                    s/Michael Hluchaniuk
                                        Michael Hluchaniuk
                                        United States Magistrate Judge

## CERTIFICATE OF SERVICE

I certify that on August 6, 2013, I electronically filed the foregoing paper with the Clerk of the Court using the ECF system, which will send electronic notification to the following: Diane M. Kwitoski, Laura A. Sagolla, AUSA, and the Commissioner of Social Security.

                                        s/Tammy Hallwood
                                        Case Manager
                                        (810) 341-7850
                                        tammy_hallwood@mied.uscourts.gov

Report and Recommendation
Cross-Motions for Summary Judgment
*Crussen v. Comm'r*; Case No. 12-12964